1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DELGADO, | CASE NO. 1:11-cv-00379-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| ALI SADIK; JUAN GALINDO, dba BUTLER MINI MART, | (Docket No. 24) |
| Defendants. | **OBJECTIONS DUE: 20 DAYS** |
| _____/ | |

## I.  INTRODUCTION

On October 11, 2011, Plaintiff Daniel Delgado ("Plaintiff") filed a motion for default judgment. (Doc. 24.) No opposition to Plaintiff's motion was filed.  This matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing set for December 14, 2011, was VACATED.  For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment BE GRANTED.

## II.  FACTUAL BACKGROUND

On March 4, 2011, Plaintiff filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the California Unruh Act, California Civil Code § 51 *et seq.*; California Civil Code § 54 *et seq.*; and California Health & Safety Code § 19955.

(Doc. 2.)  Plaintiff seeks statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and declaratory and injunctive relief.  Plaintiff alleges that he is wheelchair bound and the property that is the subject of this suit, Butler Mini Mart (the "Property"), presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.  (Doc. 2.)

Defendant Jan Galindo ("Galindo") was served on May 16, 2011, but failed to answer the complaint. (*See* Doc. 10). Galindo's default was entered on August 1, 2011. (Doc. 16.)  Defendant Ali Sadik ("Sadik" or collectively "Defendants") was served on August 15, 2011 (Doc. 20), but failed to answer the complaint  and default was entered against Sadik on September 16, 2011.  (Doc. 22.)

On October 11, 2011, Plaintiff filed a motion for default judgment which is currently pending before the Court.

## III.  DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined that a court should consider seven discretionary factors, often referred to as the "Eitel factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*

A plaintiff is required to prove all damages sought in the complaint.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P.

54(c).  If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.      Analysis**

**1.      The *Eitel* Factors Weigh In Favor of Default Judgment**

**a.      Prejudice to Plaintiff if Default Judgment not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until such time as Defendants participate and make an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

**b.      Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint.  In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable."  *Id.* § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc).  Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily

1    achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

2          "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is

3    disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

4    operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

5    by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730

6    (9th Cir. 2007).  Further, "[t]o succeed on an ADA claim of discrimination on account of one's

7    disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility

8    at the defendant's place of business presents an architectural barrier prohibited under the ADA, and

9    (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d

10   1065, 1085 (D. Haw. 2000).

11         According to the complaint, Plaintiff has been confined to a wheelchair for over 35 years and

12   is physically disabled as defined by the applicable California and United States laws.  (Doc. 2, ¶ 8.)

13   The Property is a facility of public accommodation and functions as a retail store open to the public.

14   (Doc. 2, ¶ 9.)  Plaintiff visited the Property on one occasion and alleges that Defendants failed to

15   provide barrier-free access to the store in the following ways: (1) the store is surrounded by curbs

16   and Plaintiff could not locate a ramp and was thus prevented from entering the facility in his

17   wheelchair; (2) parking spaces lack signage indicating which spaces are intended for access; (3)

18   parking and access aisles are improperly configured and contain excessive slopes; (4) the doors lack

19   proper hardware or exceed the allowable pressure to operate, and (5) the restroom provided lacks

20   signage and is not wheelchair accessible.  (Doc. 2, ¶¶ 10-11.)  Plaintiff alleges that the removal of

21   these architectural barriers is readily achievable.  (Doc. 2, ¶ 19.)  As these facts are taken as true

22   following the entry of default, Plaintiff has met his burden to state a prima facie Title III

23   discrimination claim.

24         California's Disabled Person's Act ("CDPA") provides that "individuals with disabilities or

25   medical conditions have the same right as the general public to the full and free use" of "public

26   places" and "shall be entitled to full and equal access" to "places to which the general public is

27   invited." Cal. Civ. Code §§ 54, 54.1.  The CDPA incorporates by reference an individual's rights

28   under the ADA, and provides that a violation of the ADA constitutes a violation of the CDPA.  Cal.

1   Civ. Code §§ 54(c), 54.1(d).  Plaintiff sufficiently alleges that Defendants discriminated against him

2   by denying him full and equal access to the store; further, Plaintiff has sufficiently alleged a claim

3   under the ADA.  (Doc. 2, ¶¶31-37.)

4           Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal

5   accommodations, advantages, facilities, privileges, or services in all business establishments of every

6   kind whatsoever."  Cal Civ. Code § 51(b).  Additionally, no business establishment of any kind

7   whatsoever shall discriminate against any person in this state on account of disability.  Cal. Civ.

8   Code § 51.5.  The Unruh Act also incorporates an individual's rights under the ADA by reference,

9   such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ.

10  Code § 51(f).  Here, Plaintiff alleges that Defendants denied him full and equal accommodations,

11  advantages, facilities, privileges and services in a business establishment based on his disability.

12  (Doc. 2, ¶¶ 38-45.)  Further, because Plaintiff's complaint properly alleges a prima facie claim under

13  the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh

14  Civil Rights Act claim.

15          Under the California Health and Safety Code § 19955, it is mandated that all public

16  accommodations constructed in California comply with the requirements of Government Code

17  § 4450.  Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities,

18  construed in this state by the use of state, county, or municipal funds, or the funds of any political

19  subdivision of the state shall be accessible to and usable by persons with disabilities."  Cal. Gov't

20  Code § 4450.  Additionally, non-exempt public accommodations constructed prior to July 1, 1970,

21  and later altered or structurally repaired, are required to comply with the same requirements of the

22  California Health and Safety Code.  Cal. Health & Safety Code § 19959.

23          Plaintiff incorporates his allegations regarding the barriers he encountered at the Property.

24  Further, he alleges that the store is a public accommodation "constructed, altered, or repaired in a

25  manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both),

26  and that the Facility was not exempt under the Health and Safety Code § 19956."  (Doc. 2, ¶ 49.)

27  Although largely boilerplate, this claim is sufficiently pled.  *See Loskot v. D & K Spirits, LLC,* No.

28  2:10-cv-0684-WBS-DAD, 2011 WL 567364, at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although

5

"plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment).

The complaint sufficiently states these causes of action and there appears to be merit to the substantive allegations.  Therefore, these *Eitel* factors weigh in favor of default judgment.

### c.    Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiff is seeking a default judgment in the amount of $11,471.04 which includes attorney's fees and costs.  This is not a particularly large sum of money nor does it appear unreasonable in light of Defendants' actions.

### d.    Dispute Concerning Material Facts

With regard to this factor, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants have submitted nothing to contradict the well-pled allegations.  Accordingly, this factor favors entry of default judgment.

### e.    Default due to Excusable Neglect

There is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

### f.    Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed when compared with the other applicable factors that weigh in favor of granting default judgment.

### 2.    Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a.    Injunctive and Declaratory Relief

Plaintiff's complaint seeks an injunction requiring Defendants to make the following changes

6

and accommodations at the subject Property: (1) properly configure an accessible route within the boundary of the facility to the accessible entrance; (2) properly configure and identify accessible parking spaces and access aisles; (3) provide proper tow-away signage at the parking facilities; (4) fit all accessible doors with accessible hardware; (5) ensure all accessible doors require no more than 5 pounds of pressure to operate; and (6) configure restrooms available to the public to be accessible to persons with disabilities.  As the factual allegations in the complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to both state and federal law.  *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

### b.    Statutory Damages

The Unruh Civil Rights act provides for, among other things, a minimum statutory damages amount of $4,000 per violation.  Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination").  Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a).

Plaintiff has sufficiently alleged facts indicating that he visited the Property on one occasion and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.  (Doc. 2, ¶¶ 10-11.)  Thus, Plaintiff is entitled to $4,000 in statutory damages.

### c.    Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion.  The fee award is calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1146-48 (9th Cir. 2001).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate.  *See D'Emanuele [v. Montgomery Ward & Co.,*

*Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990)]; *Hensley* [*v. Eckerhart*, 461 U.S. 424,] 461 (1983). The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $9,842.50 for the total billable time spent on the matter as well as $1,628.54 in costs. (Doc. 24-1, 7:21-27.) Specifically, Plaintiff requests $8,347.50 for 23.85 hours of work expended by Ms. Tanya Moore, Esq. at an hourly rate of $350. Plaintiff also seeks $1,495 for 13 hours spent by paralegal Marejka Sacks at an hourly rate of $115.

### (i)    Ms. Moore's Rate and Time Expended

With regard to the number of hours expended by Ms. Moore, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable and do not require any adjustments. After analyzing the billing entries and time records submitted by Plaintiff's counsel, 23.85 hours billed by Ms. Moore are reasonable.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts utilize the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore has specialized in representing plaintiffs in disability actions for the past two and one-half years. (Doc. 24-1, 6:27-28.) Ms. Moore states in her declaration that she has filed and successfully prosecuted over 200 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for twelve years. (Doc. 24-4, ¶¶ 2-3.) Plaintiff asserts that $350 per hour has been found reasonable for an attorney with comparable experience to Ms. Moore in similar cases. (Doc. 24-1, 7:1-10.) Specifically, Plaintiff cites *Luna v. Hoa Trung Vo*, No. CV F 08-1962-AWI-SMS, 2011 WL 2078004 (E.D. Cal. May 25, 2011) and contends that, in *Luna*, the court found $350 was a reasonable hourly rate for an attorney with comparable experience to Ms. Moore.

In *Luna*, the court determined that a reasonable hourly rate for an attorney in the Fresno area with more than 40 years of experience was $375 per hour. *Id.* at * 5. Further, with regard to two associate attorneys, one having twenty years of litigation experience and the other having ten years of litigation experience, the court held that "the Fresno area market would not support the rates requested," and found that a rate of $315 per hour and $295, respectively, were appropriate and within the range of prevailing rates for this community. *Id.*

In this case, while Ms. Moore has twelve years of experience and she has specialized in the last two and a half years in disability cases, a rate of $350, like the court observed in *Luna,* is not supported in the Fresno area market. Rather, in light of the rationale offered by *Luna*, the court finds that a reasonable hourly rate of $300 is appropriate. Further, other than citing two cases in the Fresno division of the Eastern District, Plaintiff has provided no other evidence indicating that an hourly rate of $350 is warranted, particularly where, as in *Luna*, an attorney with nearly four times the amount of experience as Ms. Moore was assigned an hourly rate of $375.

### (ii) Paralegal Rate and Time Expended

The Court finds that the 13 hours expended by paralegal Marejka Sacks was reasonable, and there is no reason to reduce the hours requested.[1] Plaintiff asserts that courts, specifically in *Luna*,

---

[1] The billing statement delineates between work performed by Marejka Sacks and time expended by a legal secretary. (Doc. 24-4, ¶ 4.) Only the work delineated "MS Time" has been calculated for purposes of Plaintiff's request for fees for paralegal time. One apparent typographical error does appear in the billing statement which is noteworthy. On "07/21/2011," a billing entry indicates that over 15 hours of secretarial time was spent on that day calendaring a

have found hourly rates from $100 to $165 for paralegal work to be reasonable. (Doc. 24-1, 7:11-15.)  In *Luna*, the court found $165 and $100 to be reasonable hourly rates for the time attributable to the work of two paralegals.  *Luna*, 2011 WL 2078004, at *6.  As determined by *Luna*, this rate appears to be reasonable in the Fresno area.  Thus, the Court recommends that Plaintiff be awarded 13 hours of paralegal time expended at an hourly rate of $115 for a total of $1,495.00.

### (iii)   Litigation Expenses and Costs

Plaintiff may also recover, as part of the award of fees, litigation expenses pursuant to 42 U.S.C. § 2205.  The term "litigation expenses" in Section 12205 has been interpreted to include "the same out-of-pocket expenses that are recoverable under 42 U.S.C. § 1988."  *Robbins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1037 (D. Or. 1996).  Under Section 1988, Plaintiff may recover those out-of-pocket expenses that "would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiff seeks a total of $1,628.54 in costs and litigation expenses.  The largest component of the expenses is a one-hour Lexis research fee of $1,148.00 billed on May 31, 2011. (Doc. 24-5, p. 3.)  Notably, counsel did not bill for time spent actually performing the research on the date the fee was recorded.[2]  The Ninth Circuit has not yet addressed whether computer research fees are recoverable as a component of costs.  Some courts have determined that computerized legal research is a component that must be included in an attorney's hourly rate as overhead; thus, computerized research fees are not separately recoverable as costs.  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1370 (N.D. Cal. 1996); *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 695 (8th Cir. 1983).  The Third Circuit, however, concluded in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3d Cir. 1980) that the district court's refusal of an award of costs for computer-aided legal research

---

single order.  (Doc. 24-5, p. 3.)  Ms. Moore's declaration sets forth that secretarial time for this matter amounted to $1,901.70, which includes the 07/21/2011 billing entry for 15 hours of calendaring. (Doc. 24-4, ¶ 4.) While Plaintiff does not seek compensation for secretarial time expended and thus this time entry is not relevant to Plaintiff's request for fees, it has bearing on the accuracy of the billing statement in general and the closeness with which the billing entries were reviewed.

[2] Counsel presents other billing entries for Lexis research, where attorney time, as opposed to Lexis charges were billed.  The May 31, 2011, Lexis research billing charge appears to be billed in addition to the time counsel spent actually performing searches.  (*See* Doc. 24-5, p. 1-2 ("02/28/2011" billing entry for "Research: Research Lexis, ParcelQuest, etc."; "05/17/2011" billing entry for "Research: Additional research re whereabouts fo Sadik").)

was incorrect.  The court noted that "[u]se of computer-aided legal research such as [Lexis], or [Westlaw], or similar system is certainly reasonable, if not essential, in contemporary legal practice."  *Id.*  On the other hand, the Seventh Circuit has reasoned that computerized research fees should be treated as attorney fees because the computer reduces the number of hours spent researching:

> The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.  Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.  In both cases total costs are attorney fees and may not be recoverable as "costs."

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994).  The Central District issued a decision in *Cairns* finding the Seventh Circuit's reasoning persuasive in awarding computerized search fees as part of attorney's fees, but noted that "Westlaw charges are not an exact substitute for an attorney's hourly rate."  *Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185, 1189 (C.D. Cal. 2000).  "Moreover, some part of Westlaw's charges must be considered overhead, if for no other reason than the fact that law firms do not charge clients for law books."  *Cairns*, 115 F. Supp. 2d at 1189.

Courts in this district have awarded computerized search charges as costs.  *See, e.g., B & H Mfg. Co., Inc. v. Lyn E. Bright*, No. CVF01-6619-AWI-LJO, 2006 WL 547975, at *16 (E.D. Cal. Mar. 3, 2006).  The reasoning presented in *Cairns,* however, persuades the Court that some of the Lexis charges billed here should be considered overhead expenses regardless of how computerized search charges are categorized.  Additionally, the line-item in the billing statement does not provide any evidence what particular searches were performed or how the total research cost of $1,148 was tallied.  Instead, the cost is included in the billing sheet as a single entry indicating 1.0 of time as a "Lexis Research Fee" amounting to $1,148 without any supporting invoice or other Lexis statement establishing how the cost was calculated.  (Doc. 24-5, p. 3.)  *See B & H Mfg. Co., Inc.*, 2006 WL 547975, at *16 (determining that failure to indicate how research costs on Westlaw were calculated justified a reduction in the award for computerized search fees).[3]  To account for these issues, the

---

[3] The Court is also skeptical of the billing statement as a sufficient proffer of evidence of such a large Lexis research charge in light of the significant error (or clearly unreasonable time expenditure) in the billing statement as footnoted above at page 9.

11

Court finds that the computer research fee must be reduced by one-half for a total of $574. The remainder of the costs appears compensable, and the Court recommends that Plaintiff be awarded costs in the amount of $1,054.54.

## IV.  RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1.   Plaintiff's motion for default judgment should be GRANTED;

2.   Judgment be entered in Plaintiff's favor and against Defendants Ali Sadik and Juan Galindo dba Butler Mini Mart;

3.   Defendants be found and declared to be in violation of the Americans with Disabilities Act;

4.   Plaintiff be awarded statutory damages in the amount of $4,000;

5.   Plaintiff be granted an injunction requiring Defendants to provide readily achievable property alterations at the facility, Butler Mini Mart, located at 3804 East Butler Avenue, Fresno, California, in accordance with the Americans with Disabilities Act of 1990 and the Americans With Disabilities Act Accessibility Guidelines contained in 28 C.F.R. Part 36 that consist of:

   a.   A properly configured accessible route within the boundary of the facility to the accessible entrance;

   b.   Properly configured and identified accessible parking spaces and access aisles;

   c.   Proper tow-away signage installed at the parking facility;

   d.   All accessible doors fitted with accessible hardware;

   e.   All accessible doors to require no more than 5 pounds of pressure to operate; and

   f.   Configuration of restrooms that are available to the public so that they are accessible to persons with disabilities; and

6.   Plaintiff be awarded attorney's fees in the amount of $7,155.00 (23.85 hours x $300

per hour), paralegal fees in the amount of $1,495.00 (13 hours x $115 per hour), and costs of suit in the amount of $1,054.54, for a total amount of $9,704.54.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty (20) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:      December 19, 2011**                     _____/s/ Sheila K. Oberto_____
                                                UNITED STATES MAGISTRATE JUDGE